ORAL ARGUMENT REQUESTED

Case No. 15-8109

―――――――――――――――――――――

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

―――――――――――――――――――――

WILDEARTH GUARDIANS, et al.,

*Petitioners-Appellants,*

v.

UNITED STATES BUREAU OF LAND MANAGEMENT,

*Respondent-Appellee,*

and

WYOMING MINING ASSOCIATION, et al.,

*Intervenors-Appellees.*

―――――――――――――――――――――

On Appeal from the United States District Court for the
District of Wyoming, Case No. 2:13-cv-00042-ABJ
(Judge Alan B.  Johnson)

―――――――――――――――――――――

**RESPONSE BRIEF OF APPELLEES BTU WESTERN RESOURCES, INC.,
NATIONAL MINING ASSOCIATION, AND
WYOMING MINING ASSOCIATION**

―――――――――――――――――――――

Kirsten L. Nathanson
Daniel W. Wolff
Sherrie A. Armstrong
CROWELL & MORING, LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2500
knathanson@crowell.com
dwolff@crowell.com
sarmstrong@crowell.com
*Counsel for Appellee*
*BTU Western Resources, Inc.*

Michael Drysdale
DORSEY & WHITNEY, LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
(612) 340-5652
drysdale.michael@dorsey.com
*Counsel for Appellee*
*National Mining Association*

Andrew C. Emrich, P.C.
HOLLAND & HART LLP
6380 S. Fiddlers Green Cir.,
Suite 500
Greenwood Village, CO
80111
(303) 290-1621
acemrich@hollandhart.com
*Counsel for Appellee*
*Wyoming Mining Association*

## RULE 26.1 STATEMENTS

BTU Western Resources, Inc. is a wholly-owned subsidiary of Peabody Energy Corporation ("Peabody Energy"). Peabody Energy is publicly traded on the New York Stock Exchange under the symbol "BTU". Peabody has no parent corporation and no publicly held corporation owns more than 10% of Peabody's outstanding shares.

National Mining Association ("NMA") is a non-profit, incorporated national trade association. NMA has no parent corporation and no publicly held corporation owns 10% or more of its stock.

Wyoming Mining Association ("WMA") is a non-profit trade association. WMA has no parent corporation and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT REGARDING PRIOR OR RELATED CASES ........................... vii

GLOSSARY ........................................................................................... viii

CONTRA STATEMENT OF JURISDICTION ............................................... 1

ISSUE PRESENTED FOR REVIEW ........................................................... 1

STATEMENT OF THE CASE .................................................................... 2

    A.    Legal Framework and the Case Below ......................................... 2

    B.    Position on Appeal ................................................................... 6

STANDARD OF REVIEW ........................................................................ 7

SUMMARY OF ARGUMENT .................................................................... 7

ARGUMENT ........................................................................................ 10

I.      THE GROUPS' STANDING ARGUMENT IS WAIVED. ......................... 13

II.     THE GROUPS' STANDING ARGUMENT LACKS MERIT. .................... 14

    A.    The Groups Cannot Show An Article III Injury-In-Fact Flowing From BLM's Alleged Failure To Consider Climate Change Impacts. .................... 14

    B.    The Groups Also Cannot Demonstrate Their Injury Is Fairly Traceable To The Alleged Procedural Violation or Redressable by this Court. ................. 17

    C.    The Other Climate Change Standing Cases Relied on by the Groups Are Inapposite. ............................................................................. 20

        1.   The Cases on Which the Groups Rely Are Factually Inapposite. ........... 20

        2.   This Court May Also Conclude that the Cases on Which the Groups Rely Were Wrongly Decided. ..................................................... 23

CONCLUSION ..................................................................................... 24

STATEMENT REGARDING ORAL ARGUMENT ......................................... 26

CERTIFICATE OF RULE 32 COMPLIANCE ............................................. 27

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
468 U.S. 737 (1984) ........................................................................ 23

*Amigos Bravos v. U.S. BLM*,
816 F. Supp. 3d 1118 (D.N.M.  2011) ........................................... 16

*Anderson v. U.S. Dep't of Labor*,
422 F.3d 1155 (10th Cir. 2005) ..................................................... 16

*Baker v. Penn Mut. Life Ins. Co.*,
788 F.2d 650 (10th Cir. 1986) ....................................................... 14

*Bronson v. Swensen*,
500 F.3d 1099 (10th Cir. 2007) ..................................................... 16

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ......................................................................... 23

*Comm. to Save the Rio Hondo v. Lucero*,
102 F.3d 445 (10th Cir. 1996) .................................................. 15, 17

*Cudjoe v. Indep. Sch. Dist. No. 12*
297 F.3d 1058, 1063 (10th Cir. 2002) ............................................. 7

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior*,
563 F.3d 466 (D.C. Cir. 2009) ....................................................... 16

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ....................................................................... 23

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
438 U.S. 59 (1978) .................................................................... 23, 24

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.  (TOC), Inc.*,
528 U.S. 167 (2000) ....................................................................... 23

*FW/PBS, Inc. v. City of Dallas*,

   493 U.S. 215 (1990).................................................................................. 11

*Gilbert v. Med. Econ. Co.*,

   665 F.2d 305 (10th Cir. 1981)................................................................... 14

*Glover River Org. v. U.S. Dep't of the Interior*,

   675 F.2d 251 (10th Cir. 1982)................................................................... 19

*Gollust v. Mendell*,

   501 U.S. 115 (1991).................................................................................... 7

*Grasmick v. Otis Elevator Co.*,

   817 F.2d 88 (10th Cir. 1987)..................................................................... 14

*Habecker v. Town of Estes Park, Colo.*,

   518 F.3d 1217 (10th Cir. 2008)................................................................. 18

*Headrick v. Rockwell Int'l Corp.*,

   24 F.3d 1272 (10th Cir. 1994)................................................................... 16

*High Country Conservation Advocates v. U.S. Forest Serv.*,

   52 F. Supp. 3d 1174 (D. Colo. 2014)................................................... 20, 21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

   511 U.S. 375 (1994).................................................................................. 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

   134 S. Ct. 1377 (2014) ............................................................................. 23

*Lujan v. Defs. of Wildlife*,

   504 U.S. 555 (1992)................................................10, 11, 12, 14, 16, 17

*Lyons v. Jefferson Bank & Trust*,

   994 F.2d 716 (10th Cir. 1993)................................................................... 14

*Massachusetts v. EPA*,

   549 U.S. 497 (2007)......................................................................16, 18, 19

*Nat'l Org. for Women, Inc. v. Scheidler,*

    510 U.S. 249 (1994)................................................................................ 7

*Native Vill. of Kivalina v. ExxonMobil Corp.,*

    663 F. Supp. 2d 863 (N.D. Cal. 2009) ...................................................... 16

*Nova Health Sys. v. Gandy,*

    416 F.3d 1149 (10th Cir. 2005)............................................................... 7

*Powder River Basin Res. Council v. Babbitt,*

    54 F.3d 1477 (10th Cir. 1995).................................................................. 7

*S. Utah Wilderness All. v. Office of Surface Mining Reclamation and Enf't,*

    620 F.3d 1227 (10th Cir. 2010)............................................................... 12

*Sierra Club v. Adams,*

    578 F.2d 389 (D.C. Cir. 1978) ........................................................21, 22, 24

*Sierra Club v. Morton,*

    405 U.S. 727 (1972)........................................................................11, 15

*State of Utah v. Babbitt,*

    137 F.3d 1193 (10th Cir. 1998)............................................................... 18

*Summers v. Earth Island Inst.,*

    555 U.S. 488 (2009)...................................................................10, 14, 15

*Tele-Commc'ns, Inc. v. C.I.R.,*

    104 F.3d 1229 (10th Cir. 1997)............................................................... 14

*Utah Envtl. Congress v. Richmond,*

    483 F.3d 1127 (10th Cir. 2007)............................................................... 19

*Wash. Envtl. Council v. Bellon,*

    732 F.3d 1131 (9th Cir. 2013)................................................................. 16

*WildEarth Guardians v. BLM,*

    8 F. Supp. 3d 17 (D.D.C. 2014) .........................................................20, 21

*WildEarth Guardians v. Jewell* (*West Antelope II*),

    738 F.3d 298 (D.C. Cir. 2013) ...........................................................................20, 21, 22

*WildEarth Guardians v. Pub. Serv. Co. of Colo.*,

    690 F.3d 1174 (10th Cir. 2012) ................................................................................ 18

*WildEarth Guardians v. U.S. Forest Serv.*,

    828 F. Supp. 2d 1223 (D. Colo. 2011) ................................................................20, 21

## <u>Statutes</u>

Federal Land Policy and Management Act

    43 U.S.C. § 1701 *et seq.*...........................................................................................2, 3

National Environmental Policy Act

    42 U.S.C. § 4321 *et seq.*....................................................................................... ... 3

U.S. Const. art. III ...................................................................................................... 10

## STATEMENT REGARDING PRIOR OR RELATED CASES

There are no prior or pending related cases.

# GLOSSARY

| | |
|---|---|
| BLM | Respondent-Appellee U.S. Bureau of Land Management |
| FEIS | Final Environmental Impact Statement |
| FLPMA | Federal Land Policy and Management Act |
| NEPA | National Environmental Policy Act |
| NMA | National Mining Association |
| State and Mining Interests | Intervenors-Appellees BTU Resources, Inc., State of Wyoming, Wyoming Mining Association, and National Mining Association |
| The Groups | Petitioners-Appellants WildEarth Guardians and Sierra Club |
| WMA | Wyoming Mining Association |

## CONTRA STATEMENT OF JURISDICTION

Although Petitioners-Appellants WildEarth Guardians and Sierra Club (collectively, "the Groups") accurately state the procedural predicate for this Court's appellate jurisdiction, the Court lacks jurisdiction to entertain the merits of the Groups' appeal because the Groups lack standing to prosecute the appeal they have chosen to bring. The Groups' lack of standing on appeal is the issue presented in this brief for the Court's review.

## ISSUE PRESENTED FOR REVIEW

The Groups filed suit alleging that Respondent-Appellee U.S. Bureau of Land Management ("BLM") violated the National Environmental Policy Act ("NEPA") in considering applications for certain federal coal leases by failing to take a "hard look" at: (1) the impacts of the coal leases, if granted, on local air quality and aesthetics; and (2) the impacts of such leases on global climate change. The Groups also filed declarations with the district court to support Article III standing describing how local air quality impacts would negatively affect the Groups' enjoyment of the local aesthetics. There was *no* showing in those declarations that any alleged impacts on global climate change would be felt locally. The district court held that the alleged impacts on local air quality and aesthetics demonstrated a cognizable injury in fact, and that the Groups thus had standing to press their challenge of BLM's allegedly deficient consideration of *both* local impacts and climate change impacts.

1

On appeal, the Groups no longer press their NEPA challenge of BLM's consideration of the impacts of the leases on local air quality and aesthetics. They now only complain about BLM's alleged failure to adequately consider climate change impacts. Because the Groups only claim Article III injury related to their enjoyment of local aesthetics and their interest in local air quality impacts without an accompanying claim related to BLM's NEPA analysis of those local impacts, the issue presented is whether the Groups have standing to bring this appeal.[1]

## STATEMENT OF THE CASE[2]

### A. Legal Framework and the Case Below

Under NEPA and the Federal Land Policy and Management Act ("FLPMA"), BLM is required to conduct certain environmental reviews when considering applications for leases of tracts of coal owned by the United States. In this case, BLM's findings were memorialized in a Final Environmental Impact Statement ("FEIS"). Ultimately, it approved the leases, and it is the FEIS and BLM's approval of the leases that gave rise to this lawsuit.

---

[1] Intervenors-Appellees BTU Resources, Inc., Wyoming Mining Association, and National Mining Association (collectively, "Mining Appellees") submit this separate brief solely to address the issue of Petitioners-Appellants' standing. In all other respects, the Mining Appellees join fully in the defense of the district court's ruling on the merits presented by BLM and by Intervenor-Appellee State of Wyoming.

[2] This Statement of the Case is narrowly tailored to the procedural history and legal background relevant to standing. The Mining Appellees hereby adopt and endorse the comprehensive Statement of the Case set forth by BLM and State of Wyoming.

Specifically, the Groups challenged BLM's decisions to offer for lease four federal coal tracts adjacent to the Black Thunder and North Antelope Rochelle mines in the Powder River Basin of Wyoming (known as the "Wright Area Leases") under NEPA, 42 U.S.C. § 4321 *et seq.*, and FLPMA, 43 U.S.C. § 1701 *et seq.* Before the district court, the Groups asserted first that BLM, in undertaking its review and preparing the FEIS, had failed to take a "hard look" at local air quality impacts from mining activities causing dust and clouds from rock blasting. Moving for summary judgment, the Groups contended that they had standing because BLM's failure to adequately analyze the local air pollution emitted during mining activities under the Wright Area Leases would increase the risk that their members would suffer harm to their aesthetic and recreational interests when they used the Thunder Basin National Grasslands adjacent to the Wright Area. Appellant App. at 67-68, 70-72. To show injury-in-fact, the Groups submitted a declaration from a member of both organizations, Jeremy Nichols, who regularly hikes and backpacks through the grasslands near the Wright Area Leases and who has observed air emissions from ongoing coal mining activities, including from machinery and dust clouds, which lessen his aesthetic and recreational enjoyment of the area. *Id.* at 71-72; *id.* at 202, 205-21 (Nichols Decl. ¶¶ 7, 9, 10, 13-34).

The Groups argued that their injury was traceable to BLM's actions because, "[b]y failing to adequately analyze and disclose emissions from the Leases, or consider alternatives that would reduce those emissions, BLM violated NEPA's procedural

3

mandate and increased the likelihood of harmful air emissions in areas adjacent to the Leases that are used by Petitioners' members." Appellant App. at 72. The Groups contended that their injuries were redressable because if the court directed BLM to conduct an adequate NEPA analysis, that process "could lead BLM to reject the Leases or modify them in ways that would reduce the air quality impacts." *Id.* at 73.

In addition to challenging the adequacy of BLM's examination of the impacts of the proposed coal leases on local air quality, the Groups also alleged that BLM had failed to take a "hard look" at climate change effects from the future burning of the coal (for electricity) to be leased. *See* Appellant App. at 21-50. That failure, they alleged, would harm several of their members across the country who were already suffering the effects of climate change, which they claimed could only be exacerbated by mining more coal. *Id.* Those effects are being felt from California to Florida, the Groups asserted, but they made no claim that any concrete and particularized climate change impacts had been or would be felt in the local area where the leases were authorized and mining is ongoing. *Id.*

In their own motion for summary judgment, Intervenors-Appellees BTU Resources, Inc., State of Wyoming, Wyoming Mining Association, and National Mining Association (collectively, "the State and Mining Interests"), while not disputing the Groups' standing to complain about alleged concrete and particularized effects on local air quality and aesthetics, challenged the Groups' standing to press the climate change argument for the simple reason that – as many courts have held –

4

climate change is too generalized and remote from local activities to serve as an "injury in fact" for purposes of establishing standing.

The Groups took the position, however, that their injuries "arising from BLM's inadequate analysis of the Leases' air quality impacts" supported their standing to also challenge any other defects in BLM's NEPA review such as BLM's alleged failure to take a "hard look" at the climate effects of burning coal that would be mined under the leases.  *Id.* at 73.  They argued that correction of any of the deficiencies in the FEIS, even if on climate change grounds, could lead BLM to deny the Wright Area Leases, remedying their conventional pollutant injuries in the process.  Thus, they argued, they had standing for their "entire NEPA claim."  *Id.* at 74-78.

In the alternative, the Groups contended that many of their members are suffering tangible effects of climate change at great distances from the actual mining activity and could demonstrate injury-in-fact from, *inter alia*, snowpack loss, coastline erosion, shrinking glaciers, and coastal storms spanning California to Florida, all of which they asserted is traceable to climate change caused at least in part by burning coal for electricity.  *Id.* at 68-69, 78-92.

The district court held that the Groups could press both lines of their NEPA complaint.  It agreed with the Groups that their uncontested standing to press their complaint about the adequacy of BLM's consideration of impacts on local air quality and aesthetics could also serve (for standing purposes) as the anchor for other challenges to the adequacy of the FEIS, including BLM's alleged failure to consider

distant climate impacts. The district court reasoned that vacatur of an allegedly deficient FEIS would redress the petitioners' injuries regardless of the specific flaw in the agency's decision. *Id.* at 441. The court rejected the view that "the associations must allege a personal injury resulting from climate change, rather than the lease expansion authorizations." *Id.* at 440, 478. In other words, the court concluded that as long as a plaintiff could demonstrate standing as to a single aspect of its complaint, the Article III concerns were satisfied, thus permitting the court to entertain the merits of every aspect of the complaint.

On the merits, the district court dismissed the Groups' complaint. It found that BLM's NEPA analysis was legally sufficient as to the anticipated impacts of the Wright Area Leases on both (i) local air quality and aesthetics and (ii) global climate change.

## B. Position on Appeal

On appeal, the Groups now tack. They do not appeal the district court's ruling as it relates to the merits of BLM's consideration of the impacts on local air quality and aesthetics. They appeal only the court's rejection of their assertion that BLM inadequately considered impacts on climate change, and they assert that the injury to their local interests in air quality and aesthetics is sufficient to demonstrate standing for their appeal.

## STANDARD OF REVIEW

Before a federal court of appeals can entertain the merits of an appeal, it must satisfy itself that it has jurisdiction to do so, consistent with Article III of the U.S. Constitution. *See Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002). Whether the party prosecuting the appeal has standing to do so implicates the Court's jurisdiction under Article III. *See Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation"). The Supreme Court has stated that "the plaintiff must maintain a 'personal stake' in the outcome of the litigation throughout its course," *Gollust v. Mendell,* 501 U.S. 115, 126 (1991), and the Tenth Circuit has held without ambiguity that this means a plaintiff can lose its standing at a later stage of litigation even if it had standing when it commenced the case, *Powder River Basin Res. Council v. Babbitt*, 54 F.3d 1477, 1484-85 (10th Cir. 1995).[3]

The question of standing is reviewed *de novo*. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

## SUMMARY OF ARGUMENT

Two principles govern: First, arguments not made to a district court cannot be pressed for the first time on appeal. Second, to demonstrate standing, the asserted

---

[3] To be clear, for the reasons argued to the district court, the State and Mining Interests do not believe the Groups had standing to raise their climate-change-related arguments even in the lower court. The primary argument presented in this brief is that, even assuming *arguendo* that the Groups did have standing to raise those arguments below, any such standing is lost on the appeal as presented to this Court.

injury must be at least fairly traceable to the asserted legal violation. On either or both of these grounds, the Groups' appeal must be dismissed.

The Groups' revised case theory fundamentally alters the standing calculus. In winnowing their claims on appeal, the Groups have negated their grounds for Article III standing. Having abandoned their complaint about the sufficiency of BLM's analysis of the impacts of the proposed leases on local air quality and aesthetics, and pressing only their complaint about the adequacy of BLM's consideration of the impacts of the coal leases on global climate change, *see* Appellant Br. at 17-19, the Groups can no longer demonstrate they have an extant injury *traceable* to the alleged legal violation of which they complain. After all, the Groups do not claim injury on appeal as a result of climate change; nor is there any showing in the record that climate change has caused concrete and particularized injury at the affected geographic location. They therefore lack standing.

In the court below, the Groups' standing based on alleged injury related to impacts on local air emissions was not disputed; what was disputed was their standing to complain about the adequacy of BLM's consideration of global climate change impacts. As to the latter, the Groups posited two theories in defense of their standing. First, they argued that standing to bring their local air quality NEPA complaint premised on local aesthetic and recreational injury could be used as a Trojan Horse to get them inside the gate to pursue their climate change argument. Second, they alternatively contended that their members suffered injuries nationwide

8

on account of climate change, and that those alleged injuries, judged alone, gave them standing to press the climate change issues. The district court limited its standing analysis to the first theory, finding the Groups' standing to complain about effects on local air quality issues and aesthetics sufficient (for purposes of Article III) to complain also about other aspects of BLM's analysis regardless of whether those other aspects, too, had been shown to cause injury to the Groups in their own right.

The Groups now posit a new theory. They argue that even though they did not appeal the aspect of the district court's decision rejecting their complaints about the adequacy of BLM's consideration of local air quality and the like, they may nevertheless use the local aesthetic and recreational injuries they claimed below to establish standing to press on appeal their challenge to the district court's decision rejecting their complaint about the adequacy of BLM's consideration of impacts on climate change. That is a bridge too far.

First, it is an entirely new argument. It is therefore waived. A party cannot advance a novel argument on appeal, even if related to arguments raised below. Second, and in any event, in substance the Groups' novel theory of standing does not comport with Article III; it would instead require this court to stretch the bounds of Article III farther than any court has been asked to go in assessing standing to raise climate change arguments in the context of a NEPA challenge to an agency coal-leasing decision. Although some courts, such as the district court here, have adopted a "shoe-in-the-door" theory of standing that allows a party with Article III injury

9

linked to one NEPA claim to assert any NEPA claim against the same agency action, that argument no longer exists here (and if it did, it would conflict with governing Supreme Court precedent requiring standing for each claim asserted).

For the sake of asserting standing, the Groups rely on the injury they asserted below – impairment of local air quality and the loss of enjoyment of local aesthetics. But that injury does not flow from, and therefore is not traceable to, the legal defect they now press on appeal – impacts on climate change.

The key to any standing analysis is the identification of a concrete interest that will be impaired *by virtue of* the alleged legal violation. Because the Groups are no longer complaining about the adequacy of BLM's analysis of local issues, they cannot assert injury to their enjoyment of those local aesthetics and recreational opportunities for purposes of standing. Those injuries drop out of this case, no different than if they had never been pled in the first instance. Article III of the Constitution requires injury in fact, not injury in fiction. Turning to the gravamen of the appeal, because the Groups cannot demonstrate any injury fairly traceable to BLM's failure to take a "hard look" at climate change impacts or to show that a favorable decision would redress that injury, their appeal must be dismissed for lack of standing.

## ARGUMENT

Article III of the U.S. Constitution limits the jurisdiction of the federal judiciary to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see also Summers v. Earth Island Inst.,* 555 U.S. 488, 497 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

If a party does not have standing to sue, the party is not entitled to obtain judicial review of the challenged action. *See Sierra Club v. Morton*, 405 U.S. 727, 731 (1972). The party invoking federal jurisdiction has the burden of establishing standing, and federal courts are presumed to lack jurisdiction unless a plaintiff establishes its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Defs. of Wildlife*, 504 U.S. at 561; *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

A plaintiff must establish three familiar elements in order to satisfy the "irreducible constitutional minimum of standing." *Defs. of Wildlife*, 504 U.S. at 560. First, the plaintiff must have suffered an "injury in fact" that is "(a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). Second, the plaintiff must establish a causal connection between the alleged injury and the conduct complained of, i.e., the injury must be "'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (citations omitted). Third, the plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citations omitted).

Because these elements are "not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

11

In addition, when the plaintiffs themselves are not the object of the government action, standing is "substantially more difficult to establish." *Id.* at 562 (internal quotation marks omitted); *accord S. Utah Wilderness All. v. Office of Surface Mining Reclamation and Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010).

In this case, on appeal, the Groups have a conundrum.  Having chosen not to appeal the district court's ruling on BLM's NEPA analysis related to local air quality and aesthetics, they are stuck with the fact that it was their asserted injury to their local interests that gave them standing to bring this lawsuit in the first place.  There is no direct link between their Article III injury at the district court level and the only substantive defect they are pressing on appeal.

So challenged, the Groups attempt to shoehorn their standing to press the climate change issue on appeal into the standing rationale endorsed by the district court, i.e., that the alleged injury to local aesthetics and recreation is sufficient to establish standing for *all* purposes.  But whatever the soundness of the district court's "shoe-in-the-door" theory of standing,[4] it does the Groups no good on appeal because they are no longer wearing the shoe that propped open the door in the first place – they no longer claim that BLM's alleged failure to address the effects of the Wright Area Leases on local air quality and aesthetics violates NEPA.

---

[4] Mining Appellees believe the decision below and the decisions on which the district court relied in reaching its standing conclusion were incorrect in that regard.  *See* Part II.C.2., *infra*.

The Groups argue *to this Court* only about BLM's alleged failure to address the effects of the leases on climate change, but they claim standing because of localized effects of BLM's decision that are no longer subject to judicial review. Because this theory of standing is a new argument not presented to the district court, it is waived. Moreover, this novel argument would have this Court expand NEPA standing jurisprudence beyond the apogee of Article III, and for that reason, too, the appeal must be dismissed.

## I.        THE GROUPS' STANDING ARGUMENT IS WAIVED.

The Groups' position on appeal amounts to a bait and switch. They persuaded the district court to uphold their standing to prosecute their grievance with BLM's NEPA analysis based on alleged injuries to local aesthetics and recreation *caused by* BLM's analysis. Having successfully demonstrated standing to the district court, they then also persuaded the court to entertain the merits of their NEPA grievance not only as it related to those alleged local impacts stemming from the allegedly deficient NEPA analysis, but also as it related to the impacts of the approved lease applications on global climate change (even though no local effects of climate change were alleged). On appeal, they strip away any complaint about the BLM's allegedly deficient NEPA analysis related to impacts on local air quality and aesthetics, and complain only about how BLM's allegedly deficient analysis impacts climate change. For *standing purposes only*, however, they continue to rely on their residual claims of local injury made to the district court, even though they do not assert on appeal that

there is any causal link between those injuries (which are local) and the action complained of, i.e., BLM's alleged failure to consider adequately the climate change impacts of the award of the Wright Area Leases (which are not local).

Whatever merit there might be to the Groups' current theory of standing (and there is none, for the reasons discussed next), the argument was not presented in this fashion to the district court. Because it is a novel argument on appeal, it is waived. *See, e.g., Tele-Commc'ns, Inc. v. C.I.R.*, 104 F.3d 1229, 1232 (10th Cir. 1997); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 722 (10th Cir. 1993); *Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 89-90 (10th Cir. 1987); *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 663 (10th Cir. 1986); *Gilbert v. Med. Econ. Co.*, 665 F.2d 305, 310 (10th Cir. 1981).

## II.     THE GROUPS' STANDING ARGUMENT LACKS MERIT.

Even if entertained, the Groups' theory of standing on appeal should be rejected on its merits. It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]." *Defs. of Wildlife*, 504 U.S. at 561. The Groups have failed to meet that burden by asking the Court to find they have standing based on an alleged injury that bears no relationship whatsoever to the legal claim on appeal.

### A. The Groups Cannot Show An Article III Injury-In-Fact Flowing From BLM's Alleged Failure To Consider Climate Change Impacts.

The "requirement of injury in fact is a hard floor of Article III jurisdiction." *Summers*, 555 U.S. at 497; *accord Defs. of Wildlife*, 504 U.S. at 580-81. NEPA may

14

"accord[] procedural rights to those with an interest in protecting the environment," but "standing under Article III also requires a plaintiff be among the injured." *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 449 (10th Cir. 1996) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)); *see also Summers*, 555 U.S. at 496 (The "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing.").

To show Article III injury-in-fact, "(1) the litigant must show that in making its decision without following the National Environmental Policy Act's procedures, the agency created an increased risk of actual, threatened, or imminent environmental harm; and (2) *the litigant must show that the increased risk of environmental harm injures its concrete interests* by demonstrating either its geographical nexus to, or actual use of the site of agency action." *Rio Hondo*, 102 F.3d at 449 (emphasis added).

There is no injury in fact. On appeal, the Groups take issue only with BLM's alleged failure to adequately consider the effects the coal leases will have, when exercised and the extracted coal is ultimately burned, on global climate change. Yet there is no demonstration in the record of concrete and particularized injury to the Groups (or more specifically, their members) resulting from any such failure on the part of BLM. That by itself is fatal to the Groups' appeal.

It is true that, in the court below, the Groups asserted an alternative injury-in-fact theory premised on declarations filed by certain members asserting injury from

15

the effects of climate change in other areas of the country, like California and Florida. That alternative standing theory would have had the court find that alleged climate change injury from increased coal-fired plant emissions could satisfy Article III in its own right. That alternative theory would have to be rejected by this Court for at least three reasons. First, the district court did not pass on it. Second, the Groups did not reprise it in their opening brief, so it is waived. *See, e.g., Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007); *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174-75 (10th Cir. 2005); *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277 (10th Cir. 1994).

Third, the argument would be unavailing in any event. The "effects of climate change" – whatever those might be – are general to the entire population, and allegations of general or abstract harms flowing from government action and common to all have never been sufficient to demonstrate standing. *See Defs. of Wildlife*, 504 U.S. at 573-576 (making the point and citing cases). Moreover, in the climate change context in particular, similar theories have been rejected given the speculative and remote nature of future climate change harm. *See, e.g., Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1143 (9th Cir. 2013); *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466, 478-79 (D.C. Cir. 2009); *Amigos Bravos v. U.S. BLM*, 816 F. Supp. 3d 1118, 1127-28 (D.N.M. 2011); *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 881 (N.D. Cal. 2009); *see also Massachusetts v. EPA*, 549 U.S. 497, 541-42 (2007) (describing many factors that contribute to sea-level rise). There is no basis for Article III injury in this appeal.

16

**B. The Groups Also Cannot Demonstrate Their Injury Is Fairly Traceable To The Alleged Procedural Violation or Redressable by this Court.**

The Groups contend the injury has not changed. *For standing purposes only*, they insist that the injury they asserted below – impairment of local air quality and the loss of enjoyment of local aesthetics and recreational opportunities – continues to provide a basis for standing on appeal. Appellant Br. at 18. Their argument makes no sense because that injury does not flow from, and therefore is not traceable to, the legal defect they press on appeal – impacts on climate change.

In any federal lawsuit, the legal violation complained of (which forms the basis for the cause of action) must be the source of the injury complained of (which informs the plea for relief), which is the entire point of the "traceability" element of Article III standing. *See Rio Hondo*, 102 F.3d at 449 ("To fully establish injury in fact, a plaintiff must be able to show that a separate injury to its concrete, particularized interests *flows from the agency's procedural failure*." (citing *Defs. of Wildlife*, 504 U.S. at 572) (emphasis added)).

Thus, even if this Court were to entertain the Groups' characterization of their injury, the Court would have to find that their position on standing comes up short under the traceability prong of the Article III analysis. It is one thing for alleged local aesthetic and recreational injuries to be asserted as the basis for standing when prosecuting a NEPA claim based on the agency's alleged failure to consider impacts of the proposed project on local air quality. Indeed, nobody questioned the Groups'

17

standing to press any such claim below.  But it is quite another thing to assert standing where the sole asserted NEPA claim on appeal – an alleged failure to take a hard look at effects of the agency action on climate change – is unrelated to any local aesthetic or recreational injury, such as from dust or other local emissions experienced by the Groups' members who recreate in the Thunder Basin National Grasslands.  There is no claim in this litigation, either here on appeal or in the court below, that the complained of climate-change effects are felt in a concrete and particularized way by the Groups' members at the local level.

Article III requires a demonstration that the defendant's conduct caused the plaintiff's injury-in-fact.  *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008); *see also State of Utah v. Babbitt*, 137 F.3d 1193, 1211 (10th Cir. 1998) (there must be "an injury-in-fact with a causal nexus" to the complained of conduct). Here there is none: the local emissions are not greenhouse gases, and none of the declarations even attempt to discuss local climate-change injury at all, let alone in a manner that would differentiate the Groups' members' alleged injuries from those common to the public generally.

Similarly, the Groups cannot demonstrate that the now-hypothetical local injury could be redressed by a favorable decision from the Court.  *Massachusetts*, 549 U.S. at 518; *WildEarth Guardians v. Pub. Serv. Co.  of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012).  Even if this Court were to direct BLM to reconsider the projects' effects on climate change, the local issues would remain unchanged because BLM would *not*

18

be required "to reconsider *the decision that allegedly harmed the litigant.*" *Massachusetts*, 549 U.S. at 518 (emphasis added). Should the Court determine that BLM failed to take a "hard look" at climate change effects and remand this case to the agency for proceedings "consistent with this opinion," *see, e.g., Utah Envtl. Congress v. Richmond*, 483 F.3d 1127, 1140 (10th Cir. 2007), BLM would be required to revise its NEPA analysis to consider climate change, not local air quality issues. *See, e.g., Glover River Org. v. U.S. Dep't of the Interior,* 675 F.2d 251, 253-54 (10th Cir. 1982) (organization raising a procedural defect to an endangered species listing did not have standing where it could not demonstrate that its claimed injury (increased threat of flooding due to dam and other flood-protection projects being avoided on account of protecting the species) traced to the listing about which it complained). It would be wildly speculative to say BLM would take action affecting the local issues if directed to undertake further analysis of the climate change issues.

An analogy helps demonstrate the point. Assume plaintiffs are landowners adjacent to lands on which structures are being built. They do not like the construction, but instead of suing for noise, traffic, or some other injury to their interests as adjacent landowners, they claim only that the structures are being constructed out of illegally imported materials. The landowners surely would not have standing to make that claim because the only injury actually experienced (noise, etc.) would not trace to the gravamen of the complaint (illegally imported materials). And their injury would not be redressable because even if the court enjoined the use

of the illegal materials, the noise and traffic from continued construction using other

materials would continue.

The same logic applies here and deprives the Groups of standing for this

appeal with a single NEPA claim related to climate change, not local, impacts.

## C. The Other Climate Change Standing Cases Relied on by the Groups Are Inapposite.

The Groups contend that "[i]t is well settled that the types of aesthetic and

recreational injuries alleged here will be redressed by success on a NEPA claim even

where the alleged NEPA deficiency concerns consideration of climate, rather than

recreational or aesthetic, impacts." Appellant Br. at 18-19 (citing *WildEarth Guardians*

*v. Jewell* (*West Antelope II*), 738 F.3d 298, 306-07 (D.C. Cir. 2013); *High Country*

*Conservation Advocates v. U.S. Forest Serv.*, 52 F. Supp. 3d 1174, 1186-87 (D. Colo. 2014);

*WildEarth Guardians v. BLM*, 8 F. Supp. 3d 17, 30 (D.D.C. 2014); *WildEarth Guardians*

*v. U.S. Forest Serv.*, 828 F. Supp. 2d 1223, 1225 (D. Colo. 2011)).  Those cases do not

help the Groups for two reasons: First, those cases did not involve the same theory of

standing posited by the Groups here.  Second, they are of questionable merit in light

of Supreme Court precedent.

### 1.    The Cases on Which the Groups Rely Are Factually Inapposite.

As with the district court below, the courts in each of the cases cited by the

Groups were asked to determine whether plaintiffs that had already demonstrated

local injuries related to their local NEPA arguments also had standing to pursue

broader, unrelated climate change arguments.  *See West Antelope II*, 738 F.3d at 305-08;

*High Country Conservation Advocates*, 52 F. Supp. 3d at 1186-87; *WildEarth Guardians*, 8 F.

Supp. 3d at 25-31; *WildEarth Guardians*, 828 F. Supp. 2d at 1234-35.  For example, in

the *West Antelope II* case challenging earlier BLM leasing decisions in the Powder River

Basin, the plaintiffs claimed (below and on appeal) that BLM failed to adequately

consider both the increase in local pollution and global climate change caused by

future mining.  738 F.3d at 305.  Under those circumstances, the court concluded that

standing for one NEPA claim meant standing for all.  *See id.* at 306-08.  In fact,

although the *West Antelope II* court rejected the plaintiffs' independent standing based

solely on the effects of global climate change as too speculative, "they have

established a separate injury in fact not caused by climate change – the harm to their

members' recreational and aesthetic interests from *local* pollution." *Id.* at 307.  That,

the court ruled, gave them standing to bring additional challenges to the FEIS.  Here,

the Groups are *only* bringing a claim against the FEIS that has *no* nexus to their

claimed Article III injury, and therefore their reliance on *West Antelope II* is not on

point.

     This "shoe-in-the-door" jurisprudence appears to have originated with a 1978

D.C. Circuit decision, *Sierra Club v. Adams*.  When examined, that case is equally

inapplicable here.  *Adams* was a NEPA case challenging an FEIS on three grounds:

that public officials had failed to examine: (1) the environmental impact of a highway

proposed to connect Panama and Columbia on the control of aftosa (i.e., foot and

21

mouth disease); (2) possible alternative routes of the highway; and (3) the effect on indigenous people inhabiting the planned highway route.  578 F.2d 389, 390-91 (D.C. Cir. 1978).  There was no or little debate over the plaintiffs' standing to raise the first two issues.  *Id.* at 391.  As to the third issue, however, the plaintiffs had not alleged any specific harm they would suffer as a result of the agency's alleged failure to consider effects on indigenous people, but theorized that having already established standing to challenge the FEIS on at least one ground, they could challenge other defects in the FEIS "based upon the 'public interest' in requiring government officials to discharge faithfully their statutory duties under NEPA."[5] *Id.* at 392.  The court agreed, reasoning that "[a]n interpretation that unnecessarily restricts the ability of plaintiffs properly before the court to challenge additional inadequacies in an environmental impact statement would be patently inconsistent with the unequivocal legislative intent embodied in NEPA that agencies comply with its requirements to the fullest extent possible."  *Id.* at 393 (internal quotation marks omitted).

The justification behind allowing additional claims against NEPA decisions once a plaintiff has demonstrated standing to bring one claim against the NEPA decision does not exist where – as here—the ground on which standing was based, and on which the right to raise other challenges was bootstrapped, ceases to exist.

---

[5] The public interest rationale is likely no longer valid, as the D.C. Circuit intimated in *West Antelope II.*  738 F.3d at 307-08.

### 2.    This Court May Also Conclude that the Cases on Which the Groups Rely Were Wrongly Decided.

Although the Court should be satisfied that the referenced cases are inapposite, it could also conclude that they were wrongly decided based on governing Supreme Court precedent.  Standing doctrine does not permit the Groups to leverage their standing to challenge local air quality effects to engage in a broad attack on the FEIS's discussion of climate and climate change.  Rather, a plaintiff must demonstrate standing for *each* claim he or she seeks to press and for each form of relief sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press"); *see also id.* ("We have insisted, for instance, that 'a plaintiff must demonstrate standing separately for each form of relief sought.'" (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000)); *see City of Los Angeles* v. *Lyons,* 461 U.S. 95, 109 (1983); *accord Allen v. Wright*, 468 U.S. 737, 752 (1984) ("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted"), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).[6]

---

[6] *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.,* 438 U.S. 59 (1978), cited by the Groups (at 19) in support of their claim of standing, says nothing to the contrary. There, the Supreme Court stated that where a plaintiff has established both an injury in fact and a "but for" relationship between that injury and the source of its legal grievance (in that case, a federal statute limiting the liability of nuclear power

Applying this precedent to NEPA litigation, a plaintiff should have particularized injury for *each* claimed alleged deficiency in an agency's NEPA analysis. There is no injury to redress with a court order requiring further NEPA analysis on an alleged deficiency if an injury related to that deficiency is not pled and proven. *Adams* and its progeny wrongly allowed any NEPA claim to be made if standing were proven just for one. The Supreme Court's proper reading of Article III and requirement for claim-specific standing should govern here as well.

## CONCLUSION

The Groups may not shoehorn their standing on appeal into the standing analysis rendered by the district court given that they have abandoned the very legal challenge on which the district court's standing decision was based. The Groups have waived the argument, and even if it is not waived, it lacks merit for the reasons stated above. Accordingly, the appeal must be dismissed for lack of subject matter jurisdiction, in light of the Groups' lack of standing.

---

operators), it need not establish a second causal nexus to the "constitutional rights being asserted" to assail the problematic statute. *Id.* at 77-81. The Groups are not asserting the violation of constitutional rights, so *Duke* has nothing to offer them. Moreover, as discussed already, the Groups fail to show what the appellants were able to show in *Duke*, to wit, a "but for" nexus between their claimed injury (to local aesthetics and recreation) and the source of their legal grievance (the BLM's analysis of climate change impacts).

24

Dated:  April 6, 2016

Respectfully Submitted,

/s Kirsten L. Nathanson
Kirsten L. Nathanson
Daniel W. Wolff
Sherrie A. Armstrong
CROWELL & MORING, LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2500
knathanson@crowell.com
dwolff@crowell.com
sarmstrong@crowell.com

*Counsel for Appellee BTU Western Resources, Inc.*

Andrew C. Emrich, P.C.
HOLLAND & HART LLP
6380 S. Fiddlers Green Cir., Suite 500
Greenwood Village, CO 80111
(303) 290-1621
acemrich@hollandhart.com

*Counsel for Appellee Wyoming Mining Association*

Michael Drysdale
DORSEY & WHITNEY, LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
(612) 340-5652
drysdale.michael@dorsey.com

*Counsel for Appellee National Mining Association*

## STATEMENT REGARDING ORAL ARGUMENT

This case involves complicated issues of law, and Appellees BTU Resources, Inc., Wyoming Mining Association, and National Mining Association believe oral argument will benefit the Court.  Accordingly, BTU Resources, Inc., Wyoming Mining Association, and National Mining Association request that this Court set the case for oral argument once the parties have fully briefed the merits.

Submitted this 6th day of April, 2016.

/s/ Kirsten L.  Nathanson
Kirsten L.  Nathanson
Crowell & Moring, LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
(202) 624-2500
sarmstrong@crowell.com
*Counsel for Appellee BTU Western Resources*

Andrew C. Emrich, P.C.
HOLLAND & HART LLP
6380 S. Fiddlers Green Cir., Suite 500
Greenwood Village, CO 80111
(303) 290-1621
acemrich@hollandhart.com
*Counsel for Appellee Wyoming Mining Association*

Michael Drysdale
DORSEY & WHITNEY, LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
(612) 340-5652
drysdale.michael@dorsey.com
*Counsel for Appellee National Mining Association*

## CERTIFICATE OF RULE 32 COMPLIANCE

I hereby certify that this brief complies with the typeface, typestyle, and word count requirements of Fed. R. App. P. 32.  This brief contains 6,425 words excluding those portions of the brief exempted from the word count requirement by Fed. R. App. P. 32(a)(7).  I relied on Microsoft Word 2013 to determine the final word count in this proportionally-spaced brief.

*/ s/ Kirsten L.  Nathanson*
Kirsten L.  Nathanson

## CERTIFICATES OF SERVICE, DIGITAL SUBMISSIONS,
## AND PRIVACY REDACTIONS

I hereby certify that on this 6th day of April, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit via the appellate CM/ECF system.  The parties in this case will be served electronically by that system.

I hereby certify that all required privacy redactions have been made pursuant to 10th Cir. R. 25.5; that the ECF submission is an exact copy of the hard copies filed with the Clerk; and that the digital submissions have been scanned for viruses with the Microsoft Forefront Endpoint Protection 2010 program, version 1.217.362.0, and, according to the program, is free of viruses.

/s/ Kirsten L.  Nathanson
Kirsten L.  Nathanson